UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STEVEN HANSON and RANDALL PELLETIER, on behalf of themselves and all others similarly situated,<br>    PLAINTIFFS<br><br>v.<br><br>SCOTT R. JENSEN, in his official capacity as Director of the Rhode Island Department of Labor and Training<br>    DEFENDANT | **TEMPORARY RESTRAINING ORDER REQUESTED**<br><br>Case Number:   20-cv-00232 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

Plaintiffs bring this action on behalf of themselves and a putative class to challenge Defendant's policies and practices of providing no notice of any kind when stopping payment of unemployment insurance benefits ("UIB" or "UI benefits") to recipients whose eligibility has already been confirmed by Defendant. This practice of stopping UIB without any notice violates 42 U.S.C. § 503 and its regulations, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

Plaintiffs seek a temporary restraining order and a preliminary injunction enjoining Defendant (1) from hereinafter stopping, suspending, or terminating Unemployment Insurance benefits (UI) to current UI recipients, including the named Plaintiffs, without adequate written notice; and (2) to immediately resume payment of UI benefits to Plaintiff Hanson and individual class members whose weekly UI benefits were stopped without notice, as well as payment to them of retroactive benefits for each week that benefits were withheld.

1

## STATUTORY AND REGULATORY SCHEME

Unemployment insurance is a federally funded, state-administered program. Congress established the Unemployment Insurance (UI) Program. Rhode Island participates in UI. Defendant is the Director of the Department of Labor and Training (DLT), which is the state agency responsible for administering UI in Rhode Island, in compliance with federal statutes and implementing UI regulations. UIB provides temporary financial assistance to unemployed workers who lose their employment due to no fault of their own. Each state may set its own additional requirements for eligibility, benefit amounts, and length of time that benefits can be paid. To qualify for benefits, an individual must meet certain requirements.

Once individuals have filed a UI claim, they are required to certify for the weekly benefit payment every week that they are unemployed or under-employed. They are only paid for weeks in which they certified for payments. Individuals may be paid by direct deposit or by electronic payment card (EPC).

As a result of the COVID-19 pandemic, more than 30 million Americans, including many thousands of individuals employed in Rhode Island, are experiencing unemployment as they have been furloughed or laid off or have had to leave their jobs to take care of their children after daycares and schools were ordered closed. DLT reported that 71,699 initial unemployment claims were made in April, an increase of 65,401 (1038.4%) from April 2019. http://www.dlt.ri.gov/lmi/uiadmin/update.htm. Another 32,890 claims for Pandemic Unemployment Assistance (PUA) claims were filed in April. *Id.* RI unemployment in the United States is at its highest level since the Great Depression. The official unemployment rate for Rhode Island was reported as 17% in April 2020.

https://www.providencejournal.com/news/20200521/ri-unemployment-rate-hit-17-in-april.

In response to the coronavirus pandemic, Congress has acted to expand the availability of unemployment benefits. The Families First Coronavirus Response Act (FFCRA) was signed into law on March 18, 2020 and provided additional flexibility for state unemployment insurance agencies and additional administrative funding. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law on March 27, 2020. The CARES Act expands states' ability to provide unemployment insurance for many workers who have been affected by the COVID-19 pandemic, including many workers who under ordinary circumstances are not eligible for unemployment benefits. Gig economy workers, contract workers, small business owners, workers for hire, and self-employed workers who are out of work due to COVID-19 are all eligible for benefits. Even workers whose employers are still open are eligible for unemployment benefits if they are unable to work because of COVID-19. Many individuals are unable to work because schools and daycares have closed, with the result that parents must stay home to supervise young children. The CARES Act also provides an additional $600 per week through the end of July 2020.

## STATEMENT OF FACTS

DLT has instituted and maintained a practice of stopping payment of UI benefits when due without written notice of any kind to the beneficiary. On May 7, 2020, WPRI reported that "[a]n undisclosed number of Rhode Islanders have seen their jobless benefits frozen because of an ongoing federal investigation into unemployment fraud." https://www.wpri.com/target-12/ri-halts-unemployment-benefits-for-many-amid-federal-fraud-probe/ (May 7, 2020).

Among the individuals whose benefits were stopped were named plaintiffs Hanson and Pelletier. Plaintiff Hanson is self-employed as a real estate appraiser and was advised to stop working by his treating physician due to the danger posed to his life by exposure to the COVID-

19 virus due to his age (69) and his health condition (uncontrolled blood pressure). Hanson Declaration, ¶ 4. He applied and was approved for UIB; his claim was dated April 19, 2020, and it was approved with an effective date of April 20, 2020. *Id.*, ¶¶ 5, 8, 8a. He received his first UIB payment on April 21, 2020 by direct deposit to his bank account. *Id.*, ¶¶ 5, 8b. Suddenly, and without any notice of any sort, he did not receive any further benefits although he recertified weekly. *Id.*, ¶ 6, 8d.

Plaintiff Pelletier, whose last job was as a seasonal job with the National Park Service, has been out of work since December 2019. Pelletier Declaration, ¶ 4. He has been relying on the one-time federal "stimulus" payment and unemployment insurance benefits to make ends meet. His most recent unemployment claim was made on March 11, 2020 with an effective date of March 8, 2020. He started receiving benefits by direct deposit to his bank account on March 24, 2020 and has recertified weekly, but he suddenly stopped receiving benefits on May 5, 2020, and he did not receive a payment again on May 12, 2020. *Id.*, ¶ 7. He received his weekly benefit for the current week and the last two weeks on May 19, 2020, but no explanation for the hold-up was ever provided. *Id.*, ¶ 11. Because his employment is seasonal, he anticipates that he will continue to experience periods of unemployment in the future. *Id.*, ¶ 12.

Individuals who attempt to contact DLT by phone to find out why their weekly UIB payments are not being made are often left on hold for hours and/or never get through to an individual who can assist them. When Mr. Hanson first realized that he had not been paid, he called DLT; he waited on hold and was sometimes disconnected automatically. Hanson Declaration, ¶ 9. He never connected with a person even though he waited as long as four hours on hold. *Id.* He also sent numerous emails, and he received two responses from a staff person who did not provide any information about why his benefits were terminated or what he could do

to get them restored. *Id.* Mr. Pelletier called the Department on May 7, 2020 to find out why he had not been paid, and he waited online for just under two and one-half hours until someone answered the call. He was only told "payments have been delayed." Pelletier Declaration, ¶ 8. He called again on May 12, 2020 and this time waited approximately 50 minutes to speak with someone; he was told that someone would call him back, but he never received a call. *Id.*, ¶9. Individuals who contact DLT by email or by making a submission through the DLT website to find out the status of their UIB often do not receive any response.

As a result of their UIB being stopped, many class members suffer hardship; they find it difficult to pay for housing, food, and other necessary expenses. Mr. Hanson and his wife depend on his earned income in addition to their Social Security benefits and his wife's earned income as a nurse to pay their living expenses, including their property taxes, their property insurance, food, and health insurance (supplemental health insurance and Medicare). Hanson Declaration*.*, ¶ 10.

## ARGUMENT

**A.     THIS COURT SHOULD TEMPORARILY RESTRAIN AND PRELIMINARILY ENJOIN DEFENDANT'S VIOLATIONS OF THE UI ACT AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

In considering whether to grant a temporary restraining order or preliminary injunction, the court "must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir.1996) (citation omitted). *See also Sindicato Puertorriqueno de Trabajadores v. Fortuno,* 699 F.3d 1, 10 (1st Cir. 2012). The standard for granting a temporary restraining order turns on a consideration of the same factors.

5

*Int'l Ass'n of Machinists Aero Workers, Local Lodge No. 1821 v. Verso Paper Corp.*, 80 F. Supp. 3d 247, 277-78 (D. Me. 2015).

The First Circuit and its district courts have readily granted interim injunctive relief to enforce entitlements to public benefits. *See, e.g., Mass. Ass'n of Older Americans v. Sharp,* 700 F. 2d 749, 754 (1st Cir. 1983) (preliminary injunction requiring reinstatement of Medicaid benefits for AFDC recipients with stepparent income until state redetermines whether they are eligible as categorically needy); *Westenfelder v. Ferguson*, 998 F. Supp. 146, 159 (D.R.I. 1998)(preliminary injunction issued enjoining enforcement of durational requirements that reduced welfare benefits for newcomers to Rhode Island); *Febus v. Gallant,* 866 F. Supp. 45, 47 (D. Mass. 1994)(preliminary injunction issued stopping wrongful denial and termination of public assistance benefits, including Medicaid).

Plaintiff satisfies these standards, and both a temporary restraining order and preliminary injunctive relief are warranted

**B.  PLAINTIFF HANSON AND CLASS MEMBERS ARE IRREPARABLY HARMED BY DEFENDANT'S UNLAWFUL CONDUCT IN TERMINATING OR SUSPENDING UI WITHOUT ANY ADVANCE NOTICE.**

The First Circuit and its district courts have found irreparable harm when public benefits have been terminated. *See, e.g., Mass. Ass'n of Older Americans,* 700 F. 2d at 753; *Westenfelder,* 998 F. Supp. at 157; *Febus,* 866 F. Supp. at 47. Accordingly, this Court in *Westenfelder* held that welfare recipients seeking preliminary relief enjoining reductions of 30% in their benefits demonstrated the imminent threat of irreparable harm, finding that "plaintiffs are individuals on the economic precipice." 998 F. Supp. at 157.  This Court stated:  "The particular amounts represented by the thirty percent reduction of aid . . .are crucial to such persons, and the deprivation of these amounts works immediate hardships which cannot be remedied by a later judgment in

6

their favor. In these circumstances, the bell cannot later be unrung." *Id.* In *Becker v. Toia*, 439 F. Supp. 324, 336 (S.D.N.Y. 1977), the court found that the imposition of a requirement of paying co-payments for Medicaid services would cause irreparable harm, noting that the additional cost would have "drastic effects on plaintiffs" who "will be forced to live below a subsistence level."

Here, as in *Westenfelder,* the Defendant is severely restricting the ability of individuals to meet their basic needs in the midst of a pandemic that has caused the highest rate of unemployment since the Great Depression. The loss of UIB can not only leave them without the resources to obtain food but also imperil their housing and utilities.

C.  **PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CHALLENGE BECAUSE THE U.S. CONSTITUTION AND THE UI PROGRAM REQUIRE RHODE ISLAND TO PROVIDE UI RECIPIENTS WITH DUE PROCESS AND THE DEFENDANT HAS FAILED TO PROVIDE ANY NOTICE**

The likelihood of success test for interim injunctive relief turns on the Court's determination of the "probable outcomes" of Plaintiff's underlying claims. *Cohen v. Brown Univ.*, 991 F.2d 888, 902 (1st Cir. 1993). Here, Plaintiffs readily meet the test. As demonstrated below, Defendant's failure to provide any notice of the agency's decision to stop UIB denies Plaintiffs due process both under the United States Constitution and federal UI law.

   1.  **Terminating or suspending UI without any notice does not satisfy the Constitution's guarantee of due process**

In *Goldberg v. Kelly,* 397 U.S. 254, 264 (1970), the Supreme Court held that a pre-termination hearing was required before public assistance benefits could be terminated. And, as the Supreme Court recognized, a recipient must "have timely and adequate notice detailing the reasons for a proposed termination" in order for the opportunity to be heard to be meaningful. *Id.* at 267-68. Here, Defendant has provided no notice of any kind prior to or even concurrent with stopping UIB. Indeed, all recipients have been left in the dark about why their benefits abruptly

stopped, or even re-started, with no meaningful recourse, since Defendant has provided no notice and is unreachable as a practical matter. *See* Declarations of Plaintiffs, submitted herewith.[1] Such absence of notice clearly violates the commands of *Goldberg v. Kelly* for "adequate notice detailing the reasons for a proposed termination." *Id.*

Further, Plaintiffs meet the three-part test set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976), for pre-termination notice and hearings: (1) the degree of potential deprivation; (2) the "fairness and reliability of existing pre-termination procedures, and the probable value, if any, of additional procedural safeguards"; and (3) "the public interest." *Id.* at 341, 343, 347.

With regard to the first factor, as Plaintiffs receive UIB based on their loss of employment, and as their Declarations make clear, Plaintiffs are "person[s] on the very margins of subsistence." *Id.* at 340.

With regard to the second factor, the stopping of UI without any notice lacks fairness and reliability.

Further, providing notices has substantial value. If forced to provide a valid reason in fact for the terminations or suspensions, Defendant may discover its own error and eliminate or reduce erroneous terminations or suspensions. In any event, as the Supreme Court recognized in *Goldberg v. Kelly*, an adequate notice is necessary for a meaningful opportunity to challenge claims. *See* 397 U.S. at 267-68.

In *Goldberg* itself, 397 U.S. at 256-7, the Court noted that "[a]t the time the suits were filed there was no requirement of prior notice or hearing of any kind before termination of financial aid. However, the State and city adopted procedures for notice and hearing after the suits were brought,

---

[1] Plaintiff Pelletier, exhibiting a patience or determination beyond most, made two calls, one lasting over two hours and the other almost an hour in length, just to reach a human being at the Department, but he received neither information nor assistance. Pelletier Declaration ¶¶8-9.

and the plaintiffs, appellees here, then challenged the constitutional adequacy of those procedures." The Court observed that the State did not dispute that procedural due process applied to the termination of welfare benefits and went on to confirm that "public assistance benefits," no less than "disqualification for unemployment compensation," or "denial of a tax exemption," were entitled to procedural due process protection. "Such benefits are a matter of statutory entitlement for persons qualified to receive them. Their termination involves state action that adjudicates important rights." 397 U.S. at 262-63 (citations omitted).

Here, Defendant provided absolutely *no* notice of any sort, either in advance or contemporaneous with the deprivation, instead leaving the Plaintiffs and class members completely in the dark as to what happened to their benefit payments and what to do about it. Absolute zero notice is not permitted:

> There can be no doubt that unemployment benefits are a species of property protected by the fifth and fourteenth amendment due process clauses, regardless of whether the claimant wishes to establish or retain benefits. *See Sherbert v. Verner*, 374 U.S. 398, 405, 83 S. Ct. 1790, 1794–95, 10 L. Ed. 2d 965 (1963); *California Dept. of Human Resources Development v. Java*, 402 U.S. 121, 123–24, 91 S. Ct. 1347, 1352, 28 L. Ed.2d 666 (1971); *Graves v. Meystrik*, 425 F. Supp. 40 (E.D.Mo.1977) (3 judge court), *aff'd without opinion*, 431 U.S. 910, 97 S. Ct. 2164, 53 L. Ed. 2d 220 (1977); *Berg v. Shearer,* 755 F.2d 1343, 1345–46 (8th Cir.1985); *Wilkinson v. Abrams*, 627 F.2d 650, 664 & n. 18 (3rd Cir.1980); *Ross v. Horn*, 598 F.2d 1312, 1317–18 (3rd Cir.1979), c*ert. denied*, 448 U.S. 906, 100 S .Ct. 3048, 65 L. Ed. 2d 1136 (1980); *cf. Robbins v. U.S.R.R. Retirement Board,* 586 F.2d 1034, 1035 (5th Cir.1978), *modified on petition for rehearing and petition for rehearing en banc*, 594 F.2d 448 (5th Cir.1979)

*Cuellar v. Texas Employment Commission*, 825 F.2d 930, 935 (5th Cir. 1987).

Thus, Plaintiffs have established a strong likelihood of success on the merits of their claim that Defendant has denied them procedural due process.

### 2. Defendant's Lack of Notice Does Not Satisfy the UI Statute

The federal unemployment statute commands that state unemployment compensation programs "be reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(1)(1). The Supreme Court has recognized that the Congressional goal was to make insurance payments available "on the nearest payday following the termination" " to the extent that this was administratively feasible." *California Dep't of Human Resources Development v. Java,* 402 U.S. 121, 130 (1971). The Court explained, "Paying compensation to an unemployed worker promptly after an initial determination of eligibility accomplishes the congressional purposes of avoiding resort to welfare and stabilizing consumer demands . . ." *Id* at 133. The Court therefore held that California's policy of stopping payment of unemployment benefits after an employer appealed the eligibility determination violated the statute. *Id.* at 135. Chief Justice Burger explained that the requirement that the state pay unemployment benefits after the initial eligibility determination finds the individual eligible for benefits "gives effect to the congressional objective of getting money into the pocket of the unemployed worker at the earliest point that is administratively feasible. That is what the Unemployment Insurance program was all about." *Id.*

The unemployment statute also provides for an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." 42 U.S.C. § 503(a)(13). Notice of the denial and the opportunity for a fair hearing is essential for such an opportunity to be meaningful. The Sixth Circuit recently held that, for individuals receiving UIB, their "rights to adequate notice and a pre-deprivation hearing were clearly established." *Cahoo v. SAS Analytics, Inc.,* 912 F.3d 887, 903 (6th Cir. 2019).

Courts routinely find that government benefit recipients have established a likelihood of

10

success on the merits when states fail to provide them adequate advance written notice prior to terminating or reducing benefits. Thus, in *Febus,* the court noted "[m]yriad cases establish defendant's obligation" to give "notice sufficient to allow a meaningful defense against the Department's impending action," and held that the plaintiffs "have therefore demonstrated a high probability of success on the merits of their case as to this inadequate notice." 866 F. Supp. at 47. *See also Schroeder v. Hegstrom,* 590 F. Supp. 121, 131 (D. Or. 1984)(granting permanent injunction where notice did not provide sufficient information to enable recipient to determine if termination was in error); *Philadelphia Welfare Rights Org. v. Bannon,* 525 F. Supp. 1055, 1061 (E.D. Pa. 1981) (granting permanent injunction where notice did not explain statutory change and exceptions for the presence of an elderly person or person with a disability); *Becker v. Toia*, 439 F. Supp. 324, 331 (S.D.N.Y. 1977)(granting preliminary injunction, finding Medicaid recipients showed probable success on the merits because the notice was inadequate as, among other things, it did not give the reason for the action).

### D.  THE BALANCE OF THE EQUITIES STRONGLY FAVORS PLAINTIFFS

The Plaintiffs' loss of UI benefits greatly outweighs any purported injury accruing to Defendant, should the Court grant their motion for a temporary restraining order and preliminary injunction. Courts have found that the balance of equities strongly favors public benefit recipients when a state agency terminates or reduces benefits without adequate notice. *See, e.g., Becker,* 439 F. Supp. at 336 (balance of equities favors Medicaid recipients). In this case, the hardships for the UI beneficiaries whose benefits are terminated or suspended  far exceed the hardship to the Defendant in taking the minimally necessary steps to provide adequate advance notice to UI recipients that meets the basic requirements set by federal law before terminating or suspending

their benefits and in reinstating those individuals whose benefits were reduced without any notice at all.

E.  **THE RESTRAINING ORDER AND INJUNCTION WILL SERVE THE PUBLIC INTEREST**

The final prong of the test for issuing interim injunctive relief requires Plaintiffs to establish that the TRO/preliminary injunction will not adversely affect the public interest. As the court found in *Febus,* the public interest will not be served "by removing proper, needy recipients from the public assistance rolls because of inadequate and misleading notice." 866 F. Supp. at 47.

Plaintiffs' request for interim injunctive relief vindicates the public interest by ensuring that Plaintiffs and the proposed class receive the adequate written advance notice to which they are entitled under federal law prior to terminating or suspending their UI benefits and that Defendant fulfills his statutorily-imposed duty.

F.  **THIS COURT SHOULD WAIVE THE REQUIREMENT THAT A BOND BE POSTED**

This Court has discretion to waive the posting of any bond required by Fed. R. Civ. P. 65(b) or to set a token bond. *Crowley v Furniture & Piano Moving, Furniture Store Drivers, etc., Local No. 82,* 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds,* 467 U.S. 526 (1982*).* The court identified several important factors for a district court to consider in deciding whether to require a bond: (1) "at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant. . . .;" (2)"in order not to restrict a federal right unduly, the impact that a bond requirement would have on enforcement of the right should also be considered. One measure of the impact lies in a comparison of the positions of the applicant and the enjoined party." *Id.* The court went on to note that, "a bond requirement would have a greater adverse effect where the

applicant is an individual and the enjoined party an institution that otherwise has some control over the applicant than where both parties are individuals or institutions." These factors weigh in favor of waiving bond.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs hereby respectfully request that this Court issue a temporary restraining order and, after hearing thereon, that a preliminary injunction be granted, enjoining the Defendant (1) from hereinafter stopping, suspending, or terminating Unemployment Insurance benefits (UI) to current UI recipients, including the named Plaintiffs, without adequate written notice; and (2) to immediately resume payment of UI benefits to Plaintiff Hanson and individual class members whose weekly UI benefits were stopped without notice, as well as payment to them of retroactive benefits for each week that benefits were withheld., pending hearing on the merits

Respectfully submitted,

/s/ Ellen Saideman

Ellen Saideman, Esq. (Bar No. 6532)
Law Office of Ellen Saideman
7 Henry Drive

Barrington, RI  02806
Telephone:  401.258.7276
Facsimile:   401.709.0213
Email:  esaideman@yahoo.com

/s/ Lynette Labinger
Lynette Labinger, Esq. (Bar No. 1645)
128 Dorrance Street, Box 710
Providence, RI  02903
Telephone:  401.465.9565
LL@labingerlaw.com

Cooperating counsel
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF RHODE ISLAND

CERTIFICATE OF SERVICE

I hereby certify that I filed the within document via the ECF system on this 27th day of May, 2020 and that it is available for viewing and downloading to all counsel of record and that I provided the within document by email to:

Brenda Baum
bbaum@riag.ri.gov

Miriam Weizenbaum
mweizenbaum@riag.ri.gov

/s/ Ellen Saideman
Ellen Saideman, Esq.